## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

RODNEY V. GRAVES,

      Plaintiff,

v.

ZAYO GROUP HOLDINGS, INC.,
DAN CARUSO,
RICK CONNOR,
SCOTT DRAKE,
DONALD GIPS,
STEVEN KAPLAN,
CATHY MORRIS,
LINDA ROTTENBERG,
YANCEY SPRUILL, and
EMILY WHITE,

      Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Rodney V. Graves ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action against Zayo Group Holdings, Inc. ("Zayo" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed

transaction, pursuant to which the Company will be acquired by affiliates of Digital Colony Partners, LP ("DCP") and the EQT Infrastructure IV fund (together with its affiliates, "EQT") through their subsidiaries, Front Range TopCo, Inc. ("Parent") and Front Range BidCo, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On May 8, 2019, Zayo issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Zayo to DCP and EQT.  Under the terms of the Merger Agreement, Zayo stockholders will be entitled to receive $35.00 in cash for each Zayo share they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $14.3 billion.

3.      On June 3, 2019, defendants filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Zayo stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) the actual intrinsic standalone value of the Company; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors J.P. Morgan Securities LLC ("J.P. Morgan") and Goldman Sachs & Co. LLC ("Goldman").  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Zayo stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, Zayo's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act

violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Zayo is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Zayo common stock.

9.      Defendant Zayo is a Delaware corporation with its principal executive offices located at 1821 30th Street, Unit A, Boulder, Colorado 80301.  Zayo provides bandwidth infrastructure in the United States, Canada and Europe.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "ZAYO."

10.      Defendant Dan Caruso ("Caruso") is one of Zayo's co-founders and has been

Chairman of the Board and Chief Executive Officer ("CEO") of the Company since Zayo's inception in 2007. Defendant Caruso has committed to roll over 25%-30% of his equity proceeds in the Company to a holding company of Parent, in exchange for a partnership interest in such holding company.

11.     Defendant Rick Connor ("Connor") has been a director of the Company since June 2010.

12.     Defendant Scott Drake ("Drake") has been a director of the Company since November 2018.

13.     Defendant Donald Gips ("Gips") has been a director of the Company since July 2013.

14.     Defendant Steven Kaplan ("Kaplan") has been a director of the Company since April 2017.

15.     Defendant Cathy Morris ("Morris") has been a director of the Company since November 2016.

16.     Defendant Linda Rottenberg ("Rottenberg") has been a director of the Company since May 2014.

17.     Defendant Yancey Spruill ("Spruill") has been a director of the Company since November 2018.

18.     Defendant Emily White ("White") has been a director of the Company since April 2017.

19.     Defendants identified in paragraphs 10 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     EQT, founded in Sweden in 1994, is a leading investment firm with more than EUR 61 billion raised in capital across 29 funds and EUR 40 billion in assets under management. EQT has portfolio companies in Europe, Asia and the United States.

21.     DCP is a global investment firm with a focus on next generation mobile and internet infrastructure.  DCP was launched in 2018 by Digital Bridge Holdings, LLC, a leading investor in and operator of companies enabling the next generation of mobile and internet connectivity, and Colony Capital, Inc., a leading global real estate and investment management firm.

22.     Parent is a Delaware corporation and an affiliate of DCP and EQT.

23.     Merger Sub is a Delaware corporation and wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

### Company Background

24.     Zayo, founded in 2007, is a bandwidth infrastructure provider to some of the largest and most sophisticated users of bandwidth infrastructure offerings.  Zayo's core products include leased dark fiber, fiber to cellular towers and small cell sites, dedicated Wavelength connections, Ethernet, IP connectivity, cloud offerings and other high-bandwidth offerings. Zayo also offers cloud-based computing, video, mobile, social media, machine-to-machine connectivity, and other bandwidth-intensive applications.  These offerings are provided through six segments: (i) Fiber Solutions, including dark fiber and mobile infrastructure solutions; (ii) transport, including Ethernet, wavelength, wholesale IP, and SONET solutions; (iii) Enterprise Networks, including private lines, dedicated Internet and cloud-based computing and storage products; (iv) Colocation, including provision of colocation space and power and interconnection offerings; (v) Allstream, including Cloud VoIP and Data Solutions; and (vi) Other offerings, including Zayo Professional Services.

25.     Zayo's customer base includes wireless service providers, telecommunications service providers, financial services companies, social networking, media, and web content companies, education, research, and healthcare institutions and governmental agencies.

26.     Zayo provides access to its bandwidth infrastructure over a unique set of dense metro, regional, and long-haul fiber network sections and through its interconnect-oriented data center facilities.  The fiber network sections and data center facilities are critical components of the overall physical network architecture for the Internet and private networks.  Zayo's extensive fiber network spans across 28,910 route miles and 11,867,276 fiber miles (representing an average of 92 fibers per route), serves 403 geographic markets in the United States, Canada and Europe, and connects to approximately 35,000 buildings, including 1,185 data centers.  Zayo maintains fiber networks in both large metropolitan areas such as New York, Chicago, San Francisco, Paris and London, and small metropolitan areas such as Allentown, Pennsylvania, Fargo, North Dakota, and Spokane, Washington.

27.     On February 7, 2019 Zayo issued a press release announcing its financial results for the second fiscal quarter ended December 31, 2018.  For the quarter, the Company reported consolidated revenue of $639.1 million, adjusted EBITDA of $321.2 million and net income of $30.2 million, representing an increase of $8.1 million over the previous quarter.  In the February 8, 2019 earnings call, defendant Caruso optimistically described the quarter as a "solid quarter" and stated that "[t]he December '18 quarter metrics, particularly when you look at it through the lens of the network business, signals that we are on a path to accelerated growth."

28.     On May 8, 2019, Zayo issued a press release announcing its financial results for its third fiscal quarter ended March 31, 2019.  For the quarter, the Company reported consolidated revenue of $647.2 million, an increase of $8.2 million over the previous quarter,

and net income of $34.7 million, an increase of $4.5 million over the previous quarter.

**The Sale Process Leading to the Proposed Transaction**

29.     Communications between Zayo and DCP began in mid-July 2018 when Marc Ganzi ("Ganzi"), DCP's Managing Partner, met with defendant Caruso in Aspen, Colorado to discuss, among other things, a potential acquisition of Zayo by DCP.  Ganzi indicated that in the event an acquisition occurred, he would want defendant Caruso to remain part of the Company.

30.     In early August 2018, Ganzi and defendant Caruso met again to discuss a potential acquisition of Zayo by DCP.  Ganzi reiterated that as a part of any such acquisition, DCP desired to partner with defendant Caruso and the Company's current management team.  A few weeks later, on October 19, 2018, Ganzi spoke with defendant Caruso and discussed, among other things, the possibility of acquiring the Company and partnering with Company management, along with a consortium of other sponsors.

31.     On October 23, 2018, defendant Caruso, Matt Steinfort ("Steinfort"), the Company's Chief Financial Officer ("CFO"), and Rachel Stack, the Company's Senior Vice President of Corporate Strategy and Development, met with a representative of a U.S.-headquartered infrastructure fund, referred to in the Proxy Statement as "Party B," to discuss a potential acquisition of the Company.  At the meeting, the representative of Party B expressed that they were putting together a private offer to acquire the Company.

32.     On November 6, 2018, the Board convened its quarterly meeting in Boulder, Colorado.  Immediately prior to the meeting, Ganzi contacted defendant Caruso and indicated that he was working on providing a written, fully financed proposal at a share price between $41 and $42.50 per share of the Company.  Ganzi further indicated that such an offer would be provided by a consortium of sponsors.

33.     On November 16, 2018, parties referred to in the Proxy Statement as Party B, Party C, Party D, Party E, Party F and Party G, collectively referred to in the Proxy Statement as "Consortium A," jointly submitted a confidential non-binding indication of interest proposing to purchase all of the Company's outstanding common stock for $33.00 per share.  Later that day, the Board convened a meeting at which they concluded that Consortium A's offer undervalued the Company and to instruct Consortium A that Zayo would engage in further discussions only if they made a more reasonable offer.

34.     Defendant Gips contacted the CEO of Party D and indicated that Consortium A's current proposal was not credible and too low.  He further noted that Consortium A should be aware that the Company previously received an oral offer price of $41 to $42.50 per share for the Company.

35.     In response, on November 19, 2018, Consortium A submitted an updated non-binding indication of interest with a revised purchase price of $34.50 per share.

36.     On November 23, 2018, the Board met and discussed the revised proposal from Consortium A.  The Board determined that the Company's representatives should not respond to Consortium A.

37.     On December 7, 2018, Consortium A submitted an updated non-binding indication of interest to acquire the Company for $35.00 per share.

38.     At a December 16, 2018 Board meeting, representatives of J.P. Morgan and Goldman discussed with the Board a written expression of interest they received from Ben Jenkins, Managing Partner of DCP, on behalf of a different consortium anchored by DCP and EQT, collectively referred to in the Proxy Statement as "Consortium B."  The proposal expressed

an interest to purchase the Company within the price range of $36-$38 per share of common stock.

39.     On February 12, 2019, Ganzi called defendant Caruso and expressed that Consortium B made substantial progress in solidifying their equity arrangements in order to make a proposal.   Ganzi reiterated that the continuing involvement of the Company's management team would be expected.

40.     On February 20, 2019, Consortium A submitted a "best and final" offer to acquire the Company for $32.00 per share of Zayo common stock.   Ultimately, the Board determined to reject Consortium A's "best and final" offer.

41.     On February 26, 2019, Consortium B submitted a confidential non-binding preliminary indication of interest proposing to purchase all of the Company's common stock at $35.00 per share.

42.     On March 5, 2019, Zayo, EQT and DCP entered into an exclusivity agreement providing that the Company would solely negotiate the sale of the Company with Consortium B. The exclusivity agreement was set to terminate April 4, 2019 and provided for two 10-day extensions for Consortium B, if Consortium B stayed firm with its $35.00 share price.   That same day, Consortium B was granted access to a data room and began due diligence.

43.     Throughout March and April 2019, Consortium B conducted due diligence and the parties negotiated the terms of the Merger Agreement.

44.     On April 29 and April 30, 2019, Ganzi and defendant Caruso held multiple discussions.   During those discussions, Ganzi noted that there was a potential for a post-closing management equity pool.   Ganzi also conveyed to Caruso that it was particularly important to

EQT to secure defendant Caruso's commitment to stay on as CEO, along with other executives in the Company and that he roll-over his equity in the Company.

45.     From the evening of May 7 to the morning of May 8, 2019 the Board convened a meeting to discuss the acquisition.  At that meeting, J.P. Morgan and Goldman delivered their fairness opinions, and the Board determined to finalize the Proposed Transaction with Consortium B.  On May 8, 2019, the parties executed the Merger Agreement.

**The Proposed Transaction**

46.     On May 8, 2019, following the execution of the Merger Agreement, Zayo issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> BOULDER, Colo.--(BUSINESS WIRE)-- Zayo Group Holdings, Inc. ("Zayo" or "the Company") (NYSE: ZAYO), which provides mission-critical bandwidth to the world's most impactful companies, today announced that it has signed a definitive merger agreement to be acquired by affiliates of Digital Colony Partners ("Digital Colony") and the EQT Infrastructure IV fund ("EQT Infrastructure"). The transaction would result in Zayo transitioning from a public company to a private company. Under the new ownership, the Zayo team would continue to execute the Company's strategy and remain headquartered in Boulder, Colorado.
>
> Under the terms of the agreement, which was unanimously approved by Zayo's Board of Directors, shareholders will receive $35.00 in cash per share of Zayo's common stock in a transaction valued at $14.3 billion, including the assumption of $5.9 billion of Zayo's net debt obligations. The offer price represents a 32% premium to the volume-weighted price average of the last six months of $26.44.
>
> Dan Caruso, Zayo's Chairman and CEO, said, "Digital Colony and EQT share our vision that Zayo's Fiber Fuels Global Innovation. Both are experienced global investors in the communications infrastructure space, and they appreciate our extraordinary fiber infrastructure assets, our highly talented team and our strong customer base. I am confident this partnership with EQT and Digital Colony will empower Zayo to accelerate its growth and strengthen its industry leadership."
>
> Marc Ganzi, Managing Partner of Digital Colony, said, "Zayo has a world-class digital infrastructure portfolio, including a highly-dense fiber network in some of the world's most important metro markets. We believe the company has a unique opportunity to meet the growing demand for data associated with the connectivity and backhaul requirements of a range of customers. We are excited to work

alongside the management team and EQT to grow the business and expand its presence in the global market."

"We are excited by the opportunity to team up with Zayo, in a transaction reflecting EQT's commitment to investing in market leading infrastructure companies whose innovations and services are transforming society," said Jan Vesely, Partner at EQT Partners, Investment Advisor to EQT Infrastructure. "As one of the most active global infrastructure investors with a demonstrated track record of success in the telecommunications and fiber industry, we are confident that EQT, along with Digital Colony, are ideal partners for Zayo as the Company embarks on its next phase of growth. We look forward to working closely with Zayo's global team, whose entrepreneurship, collaboration and customer partnerships are best in class."

**Insiders' Interests in the Proposed Transaction**

47.     Zayo insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of Zayo.

48.     Zayo insiders stand to reap substantial financial benefits in connection with the liquidation of their illiquid holdings.  Pursuant to Section 1.9 of the Merger Agreement, each Zayo outstanding restricted stock unit ("RSU") award granted prior to the effective date of the merger and each RSU award granted to a non-employee director of the Board will be cancelled in exchange for the Merger Consideration.  The following table summarizes the value of the equity awards held by the Company's directors and executive officers:

| Name | Number of Unvested Company RSUs | Aggregate Value ($)[1] |
|---|---|---|
| **Executive Officers** | | |
| Dan Caruso | 626,206 | 21,917,210 |
| Matt Steinfort | 154,001 | 5,390,035 |
| Jack Waters | 102,723 | 3,595,305 |
| Sandi Mays | 70,196 | 2,456,860 |
| **Non-Employee Directors** | | |
| Rick Conner | 2,971 | 103,985 |
| Scott Drake | 2,334 | 81,690 |
| Donald Gips | 2,759 | 96,565 |
| Steven Kaplan | 1,970 | 68,950 |
| Cathy Morris | 3,183 | 111,405 |
| Linda Rottenberg | 2,653 | 92,855 |
| Yancey Spruill | 6,950 | 243,250 |
| Emily White | 2,547 | 89,145 |

(1)   Represents the sum of the number of shares of Company common stock subject to unvested Company RSUs multiplied by $35.00.

49.     In addition to the vesting of their equity awards, certain named executive officers will receive significant severance benefits in connection with the Proposed Transaction.  For example, defendant Caruso *alone* stands to receive *over $28 million* in golden parachute compensation.   The following table summarizes the golden parachute compensation certain named executive officers are entitled to receive upon consummation of the Proposed Transaction:

### *Golden Parachute Compensation*

| Name | Cash[1] | Equity[2] | Perquisites/ Benefits[3] | Total |
|---|---|---|---|---|
| Dan Caruso | $            — | $   28,349,998 | $           328,131 | $   28,678,129 |
| Matt Steinfort | $            — | $     7,133,826 | $                — | $     7,133,826 |
| Jack Waters | $      81,868 | $     4,874,495 | $                — | $     4,956,363 |
| Andrew Crouch[4] | $            — | $                — | $                — | $                — |
| Ken desGarennes[5] | $            — | $                — | $                — | $                — |

50.     Notably, it appears that certain members of the Company's management could expect to receive positions for themselves following completion of the Proposed Transaction.  For example, Ganzi conveyed to defendant Caruso multiple times that Consortium B desired to retain Zayo's management team post-close.  In connection with defendant Caruso and Ganzi's April 30, 2019 conversation regarding post-close employment, the Proxy Statement sets forth that "it [is] particularly important to EQT to secure Mr. Caruso's commitment to stay on as CEO,

along with Mr. Waters' and Mr. Steinfort's commitments to staying on in their current roles[. . . ]." Proxy Statement at 48.

51.     Moreover, while Zayo's stockholders are being cashed out and will lose the opportunity to benefit from Zayo's current and future prospects, a few select members of management will continue to hold an equity position with Zayo post-close.  Defendant Caruso, Steinfort and Jack Waters ("Waters"), Zayo's Chief Operating Officer ("COO"), collectively referred to in the Proxy Statement as the "Rollover Executives," have agreed to roll over portions of their equity positions in the Company.  Defendant Caruso has agreed to roll over 25%-30%, or approximately $105 million, of his equity proceeds in Zayo, and Steinfort and Waters have agreed to roll over approximately $3.5 million and $3 million, respectively, of their current equity positions in Zayo, for a total of approximately a $111.5 million equity contribution by the Rollover Executives.  At a Board meeting on May 7, 2019, defendant Caruso indicated it was "very important" to Consortium B that he, Steinfort and Waters agree to roll over portions of their equity into Consortium B's new structure.  *Id.* at 51.  None of Zayo's public stockholders, however, are being offered a similar opportunity to retain their investment in Zayo and benefit from its future growth.

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

52.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Zayo's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting or appraisal decision in connection with the Proposed Transaction.

53.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the actual intrinsic standalone value of the Company; and (ii) the data and inputs

underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors J.P. Morgan and Goldman.  Accordingly, Zayo stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Zayo's Financial Projections***

54.    The Proxy Statement is materially deficient because it fails to disclose material information relating to Zayo's best estimates of the Company's intrinsic value and prospects going forward.

55.    With respect to Zayo's Whole-Company Projections and Communications Infrastructure Projections for years 2019 to 2023, the Proxy Statement fails to disclose the following projection line items: (i) unlevered free cash flows ("UFCF"); (ii) stock-based compensation expense; (iii) amortization of deferred revenue; and (iv) additions to deferred revenue.

56.    Additionally, the Proxy Statement sets forth that "the management projections reflect numerous estimates and assumptions made with respect to industry performance, general business, economic, regulatory, market and financial conditions and other future events, as well as matters specific to [Zayo's] business . . . ." *Id*. at 69.  The Proxy Statement, however, fails to provide a fair summary of the estimates and assumptions underlying the management projections.

57.    Moreover, in connection with J.P. Morgan's *Discounted Cash Flow Analysis* ("*DCF*"), J.P. Morgan utilized the UFCF "that Allstream is expected to generate for December 31, 2019 through December 31, 2020 and estimated net proceeds from the sale of Allstream at December 31, 2020 as provided by the management of the Company. . . ." *Id.* at 59.  Yet, the

Proxy Statement fails to disclose the UFCF for Allstream.

58.     The omission of this information renders the statements in the "Management Projections" and "Opinions of the Company's Financial Advisors" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's and Goldman's Financial Analyses***

59.     The Proxy Statement describes J.P. Morgan's and Goldman's fairness opinions and the various valuation analyses performed in support of their opinions. However, the descriptions of J.P. Morgan's and Goldman's fairness opinions and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, Zayo's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Goldman's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Zayo's stockholders.

60.     With respect to J.P. Morgan's *DCF*, the Proxy Statement fails to disclose: (i) the UFCF (including the UFCF that Allstream is expected to generate for December 31, 2019 through December 31, 2020 and estimated net proceeds from the sale of Allstream at December 31, 2020 as provided by Company management) that Zayo was expected to generate for April 1, 2019 through December 31, 2023 utilized by J.P. Morgan in this analysis, as well as the definition of UFCF and the line items used in its calculation;[1] (ii) the specific terminal year

---

[1] Alternatively, to the extent the UFCF J.P. Morgan utilized in its *DCF* are the *Adjusted* UFCF for the Communications Infrastructure Projections disclosed on page 69 of the Proxy Statement, the Proxy Statement fails to and must expressly indicate this. The Proxy Statement must further disclose the UFCF that Allstream is expected to generate for December 31, 2019 through December 31, 2020 and estimated net proceeds from the sale of Allstream at December 31, 2020

UFCF to which the selected terminal value growth rates were applied to derive the terminal value; (iii) the implied terminal value multiples resulting from the analysis; (iv) quantification of the inputs and assumptions underlying the discount rate range of 7.5% to 8.5%; and (v) the Company's net debt as of March 31, 2019.

61.     With respect to J.P. Morgan's *Illustrative Sum of the Parts Analysis – Public Trading Multiples*, the Proxy Statement fails to disclose: (i) the Company's estimated 2019 EBITDA for its core communications infrastructure business and enterprise customer business; (ii) Zayo's net debt balance as of March 31, 2019; and (iii) J.P. Morgan's basis for applying EV/EBITDA multiples ranging from 14.0x to 16.0x for the core communications infrastructure business and 4.5x to 6.5x for the enterprise customer business.

62.     With respect to J.P. Morgan's *Illustrative Sum of the Parts Analysis – Selected Transactions*, the Proxy Statement fails to disclose: (i) the identity of the selected transactions involving acquired businesses in the colocation industry and fiber & enterprise industry reviewed by J.P. Morgan in its analysis; and (ii) the ratio of the target company's transaction value to the target company's EBITDA observed by J.P. Morgan.

63.     With respect to J.P. Morgan's *Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate of 9.5%; and (ii) the Company's fully diluted outstanding shares as of March 31, 2019, as provided by Company management and utilized by J.P. Morgan in its analysis.

64.     With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions

---

as provided by Company management and utilized by J.P. Morgan in its *DCF* as the Allstream projections were excluded from the Company's Communications Infrastructure Projections. *See id.* at 69.

underlying the discount rate of 8.0%; (ii) the Company's net debt as of December 31, 2019, 2020, and 2021, respectively; and (iii) the number of fully diluted outstanding shares of the Company on a standalone basis, as provided by Company management and utilized by Goldman in its analysis.

65.     With respect to Goldman's *DCF*, the Proxy Statement fails to disclose: (i) the UFCF that Zayo was expected to generate for April 1, 2019 through December 31, 2023 utilized by Goldman in this analysis, as well as the definition of UFCF and the line items used in its calculation;[2] (ii) the estimated terminal year EBITDA to which the selected multiples were applied to derive the terminal value; (iii) quantification of the inputs and assumptions underlying the discount rate range of 7.0% to 8.0%; and (iv) the Company's net debt as of March 31, 2019.

66.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

67.     The omission of this information renders the statements in the "Opinions of the Company's Financial Advisors" and "Management Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

68.     The Individual Defendants were aware of their duty to disclose this information

---

[2] Alternatively, to the extent the UFCF Goldman utilized in its *DCF* are the *Adjusted* UFCF for the Communications Infrastructure Projections disclosed on page 69 of the Proxy Statement, the Proxy Statement fails to and must expressly indicate this.

and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Zayo will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

69.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

70.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

71.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company and the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors J.P. Morgan and Goldman.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

72.     The omissions and false and misleading statements in the Proxy Statement are

material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

73.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

74.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.     The Individual Defendants acted as controlling persons of Zayo within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of Zayo and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

77.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

79.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

80.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

81.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Zayo's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.


Dated: June 17, 2019                                Respectfully submitted,

                                                    /s/ Richard A. Acocelli
                                                    Richard A. Acocelli
                                                    **WEISSLAW LLP**
                                                    1500 Broadway, 16th Floor
                                                    New York, NY 10036
                                                    Telephone: (212) 682-3025
                                                    Facsimile: (212) 682-3010
                                                    Email: racocelli@weisslawllp.com

                                                    *Attorneys for Plaintiff*